Before we start our formal session today, both Judge Prost and I would like to welcome the newest member of our court, Judge Catherine O'Malley, who comes to us from the great city of Cleveland, Ohio, where she was a district court judge for many, many years, and we welcome her to this court. We hope she will be with us for many, many more years. Welcome to the court. Thank you. Judge O'Malley. Formal proceedings, we now have five cases for this particular panel, one of which is on the record, and that's Palmer v. DBA, 2011-7020. First argued case is JOSLYN v. the U.S., 2010-5080. Mr. Eisenberg, you are reserved five minutes for rebuttal. Yes, sir. Anytime you're ready. Your Honors, so please the court. We're here today because of an Operation Iraqi veteran who was basically summarily removed from the military without being given his due process. He was injured while overseas in theater war. His command there realized that he had some problems resulting from his injuries and that he needed to return to the States. As he was being out-processed, he was basically harassed by his upper command. Is the APA money-mandating? I believe it is. The APA is money-mandating? Oh, I'm sorry. The administrative procedures? No, ma'am. So where do we get jurisdiction here? Well, either through the... Do the claims have jurisdiction? Well, admittedly, if it is strictly an APA action and not a money-mandating issue as we've alluded to earlier, then it should have been sent over to the district court because it was a matter of justice that this veteran who served in our military defending our freedoms had the opportunity to be fully heard. Why didn't you amend the complaint? I mean, you repeatedly rely on the APA as the source of your jurisdiction and the source of your remedies. Why didn't you amend the complaint in response to the motion to dismiss to either change your allegations with respect to jurisdiction or to seek a transfer? Admittedly, that was my error. As I've seen now, that needs to be more explicitly mandated in the complaint as I thought the court who still had the obligation as a matter of justice. But what kind of relief were you asking for? The Tucker Act waives sovereign immunity, but you still need an underlying money-mandating statute in order to recover monies from the federal government. True. We're still in the federal court of claims. Now, what relief were you asking for for money damages? There is a variety of money damages, either that he goes through the MED process for which he'd be entitled to, we believe, either a military discharge of a disability rating under 30% or a military medical retirement, which would be a disability rating of 30% or greater. The former would give him a one-time check calculated based on his time in service and his disability. On the other hand, if it was a military retirement, then he would be garnered a monthly check for the rest of his life, also access to, and I apologize, the insurance, the TRICARE insurance, military post-privileged- Do you want to transfer this to the D.C. District Court? Do you think that's the kind of relief you can get there under the APA? Indirectly, yes. Mind you, we're talking about two different things. One is the money-mandating issue and the other is the APA issue. Specifically in the APA issue, he was denied due process because it was quite clear based on the record that there were so many inconsistencies regarding how he was functioning as a soldier and how his results came out that it was clearly an error. So are you conceding here for us that there was no jurisdiction so the only issue left in this case is whether or not the case ought to be transferred? No, ma'am, and I apologize if I'm not articulating myself well here. You think there is jurisdiction? You think the underlying statutes that were pled here are money-mandating? Yes, ma'am, because, as I mentioned earlier, he was entitled to a military examination board, physical examination board, which would have resulted in a disability percentage rating, which would have resulted in his military discharge or retirement, which that in itself would have given him money for the rest of his life. Also, while he's going through the MEBPEB process, he would be entitled to active duty compensation. But what is the money-mandating statute itself? What basis do you have for the money-mandating grant? The basis is that they was entitled to these monies. Sorry, do you want, is it, is the relief you want more process before the board? Do you want them to reconsider because you feel that he didn't receive enough process or are you asking for an award of dollars? Well, I respect that the courts don't like to, quote unquote, tell the military what to do, but I think that it needs to be ideally remanded back to the board with instructions to actually not act arbitrarily and capriciously in their decision making. They relied heavily on his ROTC commander's statement that he was performing satisfactory, yet he was up for charges for not doing his duties. He has a letter of representation from a major who he served under who said that clearly he wasn't performing his duties, that he couldn't do physical training, that he wasn't getting his assignments done, that he had a psychologist, when the first MEVPEB process began, saying that this man has PTSD and has severe functional disabilities when interacting with his peers and the public and getting his work done. It was suddenly after he had his MEVPEB that the, I believe it was the same psychologist who said, yeah, he still has these conditions and then changed her mind later when she realized, oh, he's not actually up for a second MEVPEB, where the client thought understandably that if he had provided more evidence, as the PEB told him, that they would reconsider their decision. I understand it was optional, but why didn't you take an additional administrative appeal when it was available to you before going straight to the courts? Because the client, much like other veterans, felt they were simply beating their head against the wall, that the military wasn't listening to them, that they needed an outside source, an unbiased source to basically get them to do what they should be doing to begin with. I mean, when you try to correct a military record, don't you need to exhaust all of your remedies before you try to seek judicial relief? No, sir. And the BCMR option, I believe under 10 U.S.C. 1551, is optional. It's not mandatory. That process is optional. So if he goes halfway through it, he can still elect to get out of it. But once you're in it, don't you need to continue and complete it? You can't just opt out at the last minute before you get a final decision. No, he had a final decision from the first board. It was a request for reconsideration that he decided not to pursue. And he's not under any obligation to do so. What will that accomplish? Once you opt out from reconsideration, you file a complaint in a court of claims. Yes, sir. Not in the U.S. District Court. Yes, sir. And you're seeking money damages without a money mandating underlying statute. I believe it was the Military Pay Act that was the money mandating statute. That's not cited in your complaint. That's not in your complaint, though. I understand. However, I do believe it is inherent in the complaint for the damages that he was seeking. And I believe it's Tawambly that the complaint and the pleading should be construed liberally in favor of the plaintiff. I think Tawambly would say pretty much the opposite, that you have to actually have a basis, a factual basis as well as a legal basis to support your claim or it's subject to dismissal. Right. But I believe it would say that if the facts are still there to enunciate whatever legal remedy is there, then it should be construed in favor of the pleader. The problem you have, though, is it's not that it's ambiguous. It's that you say over and over and over that the APA is the vehicle that supplies the basis for your claims. That was, admittedly at the time, what we thought was the stronger of the two. But the two are still there. And the second one being the money? Mandating. The money mandating inherent from the fact that he's seeking relief in the forms of, and forgive me. Back pay. Back pay and also military retirement. But you need to specifically claim that. You can't just be inherent. You can't expect the court to, all of a sudden, out of thin air say, well, this looks like a money mandating statute because he's asking for back pay. You can cite it. You can cite the back pay statute. But it's not cited in the complaint itself. Admittedly, I haven't read the complaint itself recently. I respect what you're saying. However, I will go back to the argument that one, it should be construed liberally. And quite frankly, given the way the Supreme Court came out in Henderson v. Shinseki, and that would basically give a little more leeway to the veteran. Although this is not a typical VA case. The court went at length to discuss how those men and women who are put in harm's way should be given a little thumb on that scale. Now, if we affirm, hypothetically, the Court of Federal Claims, you could refile this claim in the district court, could you not? I apologize. I don't recall off the top of my head if this was dismissed with or without prejudice. I thought it was dismissed with prejudice. I could be wrong. But yes, that is an option if it was dismissed without prejudice. Thank you. Any more time? Do you want to save it? Yes, sir. I'll save the time. Thank you. May it please the court. This court should affirm the dismissal of Captain Johnson's complaint because the statute allegedly violated the APA is not money mandating. The en banc portion of this court's opinion in Fisher states, if the court's conclusion is that the source as alleged and pleaded is not money mandating, the court shall so declare and shall dismiss the cause for lack of jurisdiction, a 12B1 dismissal. In this case, the complaint, as the court has noted, repeatedly cited to the APA. And it states in the complaint that this is an action seeking judicial review under Section 706. Does the plaintiff really doubt what it was that he wanted out of this lawsuit? Your Honor, there is no doubt as to what he wanted out of this lawsuit. In the government's response to the motion to dismiss, it also followed a motion for judgment on the administrative record where we recognized that if there were two money mandating statutes that potentially could have been in play here, 10 U.S.C. 1201 and 37 U.S.C. 204. And we recognized that had those statutes been in the complaint, then the court would have jurisdiction. However, the complaint as drafted unfortunately did not include those statutes. But you could tell what it was, though, couldn't you? I mean, a person reading that complaint could say this is a complaint for back pay. If it's that obvious, does he really need to cite the statutory section in order to obtain relief? Your Honor, and we would differentiate this case from a case where the plaintiff simply fails to cite a statute. In this case, the plaintiff went that next step and not only did not, and not only failed to cite a statute, but actually went the next step and stated that all their claims were based on a statute that is not money mandating. However, the government did in its motion for judgment on the administrative record, which was filed concurrently with his motion to dismiss, we again recognized that had those money mandating statutes been in the complaint, then the court would have jurisdiction. And the court, in fact, noted in its opinion that it understood that the facts as alleged in the complaint, if the money mandating statutes were included, would implicate the two money mandating statutes. And so what the court did is the court then went the next step and said if jurisdiction is proper, then the court addressed the merits. Do you concede that to the extent that the dismissal was on jurisdictional grounds, which is what the court said, the other findings were just in the alternative, that it's by definition without prejudice? Do you agree? Yes, Your Honor. And unless the court has any further questions about the jurisdictional ruling of the court, I'd like at this time to move to the merits. Well, is there jurisdiction in this case? We believe that there is not jurisdiction in this case because the complaint failed to cite to a money mandating statute. And again, it not only failed to cite to a money mandating statute, but expressly more than five times stated that all claims were expressly based upon the APA, which under this court's decision in Wapstock is not a money mandating statute. So the court was without jurisdiction and decided anything else at that point? The court was without jurisdiction, deciding anything else at that point. However, under this court's decision in Ramcorp, which was a similar case in that the court ruled that it did not have jurisdiction to entertain an EJ application. However, the court then ruled in the alternative and said even if it did have jurisdiction to rule on the EJ application, the government was substantially justified in its defense. And so then it denied the EJ application. And the Federal Circuit, in reviewing that decision, disagreed with the Court of Federal Claims ruling on jurisdictional grounds, but noted that it was wise that the Court of Federal Claims then address the merits. And the Federal Circuit in that decision stated that even though it disagreed with the court's jurisdictional decision, it agreed with the Court of Federal Claims decision on the merits. And so in accordance with that precedent, we believe it was proper for the court to, even though it concluded that it did not have jurisdiction, it was proper for the court to then go on and address the merits. Do you want to address the court's determination on the merits, then? Yes, Your Honor. The court's determination... Well, on that point, I mean, can you respond to Mr. Eisenberg's concerns that when you go through the record in this case, there are documents going all different kinds of ways, are there not? Medical opinions that say some things, opinions from supervisors that say one thing going one way and the other way. How do you reconcile those? Yes, Your Honor. The way we reconcile those, we would concede that Captain Joslyn certainly had medical conditions that were related to a service. However, in a case like this, in accordance with the court's decision in Heisig, which I think is quite similar to the case here, the court there stated, on the record as a whole, which unquestionably does contain evidence of unfortunate medical problems for appellant, as well as evidence to show fitness for duty, we cannot say that the district court made any clearly erroneous findings in finding the appellant fit for duty. And here, we would submit that the weight of the evidence supports the Army's decision that Captain Joslyn was fit for duty upon his discharge. And there are really two pieces of evidence that support the Army's decisions in this regard. The first are his officer evaluation reports, which detail his service in the military. And these were... Were there any officers who later said he wasn't doing his job and couldn't seem to pull it off? No, Your Honor. The officer evaluation reports were signed by Lieutenant Colonel Baker, who was Captain Joslyn's commander in the Army. And in addition to signing the officer evaluation reports, he also submitted a commander statement, which also said that Captain Joslyn was fit for duty upon his discharge. Every piece of medical evidence said he was not fit for duty. Isn't that right? The... Your Honor, the way the Army disability evaluation system works is that a service member... I understand how it works. Just answer my question. Every piece of medical evidence said he was not fit for duty. I understand there's other evidence that you rely upon that says he was, but all the medical evidence said he was not, right? No, Your Honor. In October of 2006, Dr... I'm sorry, in December of 2008, Dr. Trotsky evaluated Captain Joslyn, and her evaluation is at the record at JA 292 to 293. And that evaluation was done after the PEB had found Captain Joslyn fit for duty. And that was the evaluation that... that counsel referred to earlier. And in that evaluation, she noted that Captain Joslyn had neurological testing done in October of 2008 that she concluded showed mild neurological problems, and she deemed those problems to be not a medically boardable condition. Okay, this is after she had originally found him not fit for duty, and then based on the non-medical information she got, she decided to change her mind, right? Isn't that the one you're talking about? Yes, that is correct. What... That's the piece of medical evidence that you rely on? Well, there's also the medical evidence of the physical evaluation board, which is the entity in the Army that is solely responsible for determining fitness for duty, and that's in the Army's regulations. And they considered all the medical evidence, and in addition to Captain Joslyn's officer evaluation reports and his commander statements, all of which fully supported the notion that Captain Joslyn was performing his duties prior to discharge. What about... Wasn't there a statement that came in at the end from one of his supervisors that had supervised him for a number of years going into 2005, claiming he wasn't fit for duty? Yes, Major Diaz, he was Captain Joslyn's... One of his supervisors at the University of Texas. And he, in his letter that he submitted to the P.E.B., he stated that it was his opinion that he was not performing some of his job duties satisfactorily. However, that is contrasted by Lieutenant Colonel Baker, who was actually Captain Joslyn's commander and who got information from all of Captain Joslyn's... All of his superiors, not just Major Diaz. And he concluded, in contrast to what Major Diaz had concluded, that Captain Joslyn was performing his duties satisfactorily. It's also important to note the timing of Major Diaz's letter. It was made his determination on June 21st, 2008. That letter was not submitted until July 1st. Did the P.E.B. say they weren't going to consider it because it was on time? The P.E.B., Captain Joslyn had 10 days from July 11th, 2008 to June 21st, 2008 to submit rebuttal matters. And Captain Joslyn, unfortunately, did not submit that letter in the 10 days. And under the Army's regulations, all rebuttal matters are forfeited at that point. However, even though it was submitted late, there is support in the record that the PDA, which is the Physical Disability Agency, which reviews the P.E.B.'s decisions, actually did look at that memorandum and reported its findings unchanged as a result. And so, this goes back to the notion that even though there is evidence that both support a finding of fitness and unfitness, the court should defer to the military in its determination of whether a soldier is fit or unfit for duty. What happens if the P.E.B. looks at the wrong set of duties for its determination? Are they supposed to be looking at a particular set of duties under the P.E.B. when they make a determination? Yes, the P.E.B. is supposed to look at what the soldier's duties were upon his discharge. And what Captain Joslyn's duties were were twofold. He was the battalion executive officer, and in that role, Major Diaz was a And in that role, in his OERs, Lieutenant Colonel Baker describes his performance as excellent, and says that he fully performed all of his duties. And the P.E.B. in its formal and informal decision noted that in accordance with Lieutenant Colonel Baker's OERs and his commander's letter, that he was fully performing all his duties, and as a result, the P.E.B. found him fit for duty. And we would submit because that determination was supported by substantial evidence, and again, the substantial evidence be all his officer evaluation reports in addition to his commander's statement, we would submit that the P.E.B.'s decision was supported by substantial evidence. But what duties was he provided after while he was waiting for his determination? Yes, he had limited duties, and it's important to remember the history of this case. Captain Joslyn actually submitted his resignation on May 13, 2008, and so as a result of submitting his resignation, that resignation was approved about a week later. Captain Joslyn then attempted to rescind that resignation request, and that attempt was not approved. So after he submitted his resignation request, he then moved to the transition unit out of the military, and he was supposed to transition out of the military on May 1st, 2008. However, he requested several extensions, and so he ultimately wasn't... So when he was found fit for duty, it was because all he did was check on the supply room at that and that was based on his performance prior to his resignation request. The P.E.B. did not note in its decision that it was basing it upon his limited duties, which again, were not unexpected because he was transitioning out of the army. And in the P.E.B.'s decision, it notes that Captain Joslyn had an attorney at his formal P.E.B. hearing, and his attorney made that argument that because Captain Joslyn had limited duties immediately prior to his discharge, that the P.E.B.'s finding that he was fit for duty was not supported. However, the P.E.B. noted that it looked at the totality of the circumstances and considered the officer evaluation report and the commander statement, which again, detailed his service in the military prior to his transition out of the military. And so the mere fact that he had limited... There was no consideration at all of the transition duties by the P.E.B.? There would be a consideration if he were not performing the duties that he was supposed to be performing in the army. He was not performing the duties he was supposed to be performing in the army during the transition period. That's understood. Yes, that's correct, Your Honor. So were those taken into consideration by the P.E.B.? Yes, the P.E.B. noted in his decision, it didn't set forth specifically what its opinions were about his service in the transition unit, except to note that his limited duties were not unusual because of the fact that he was... So why did they consider them at all, if they were not supposed to be taken into account by the P.E.B.? Well, it's not that they were not supposed to be taken into account at all. The P.E.B. looks at the service member's entire service record, and that... It seems to be rather odd to me that you have a situation where he resigns, which he claims to be involuntary, but that's not an issue before us right now. We're not discussing that. However, if during that transition time period, he is placed in temporary duties, which are not his regular duties, he's made to sweep the floors, clean out the halls, and other aspects of menial tasks, and those duties are then taken into account by the P.E.B., does that make sense? Does that make logical sense to consider those? Those are not his regular duties for his rate and serial number and rank, is it? Your Honor, it's not clear from the P.E.B.'s decision that they specifically considered those duties. However, it would be under the Army's regulation that they would consider all the service member's record of service. The P.E.B.'s decision, however, was primarily based upon Captain Jowson's service prior to his transition out of the military. And again, those duties he was performing satisfactorily, and that is supported by substantial evidence, which includes his officer evaluation reports and his commander's statement. So those would deem to be acceptable? Yes. Yes, that is correct, Your Honor. Thank you, Mr. Conner. Mr. Eisenberg, you have four minutes left for your rebuttal time. Well, Your Honors, I think it was implied during the opposing counsel's presentation that it really seems unclear what the Board was relying upon when they made their decisions. But worst part is what they did rely on specifically was non-medical evidence before them, and that was his command, who, quite frankly, was one step away from him, unlike, say, Major Diaz, who actually observed my client performing or, in this case, not performing his duties. Forgive me. I believe he specifically stated, I'm trying to find his comment, well, without wasting time, also what comes into great question is Dr. Trotsky's medical opinion that changed after the P.E.B., not before the P.E.B. or during the P.E.B., but after the P.E.B.? I mean, it just seems that all they really wanted to do was get rid of him because, ultimately, it is a drain on the military resources. If we affirm a dismissal on jurisdictional grounds and it is without prejudice, as by rule it would have to be, would it be your intention to simply refile the same thing only with appropriate jurisdictional allegations? Yes, ma'am, it would be. Obviously, we would want to continue to pursue this, but one thing that does concern me is, in the alternative or for whatever reason, the lower court made an opinion on the merits, and we don't want that to taint if we have to go into the district court. Well, if there's no jurisdiction, that would have to be vacated, right? Yes, but the problem is, it's out there. But if it's without jurisdiction, it's all dictum. Yes, sir. It's without really any ability of the court to make any decision on these substantive issues. Yes, sir. But ultimately, what I'd be concerned about is my client ultimately getting and being entitled to his monetary damages, and we don't want those capped when we go into district court. We want to make sure that we do our best for our veterans, and ideally, for a man who's served and sacrificed for our... But you can't go into district court for monetary damages, right? Well, you're limited by $10,000. Right. So obviously, we want, the damage would have to be very specific to, we want the MEB redone again, or the PEB redone again properly. The natural consequence from that would be, of course, a military, ideally a military medical retirement, which would be monetary award. Hopefully, that's considered one step away from the damages we're actually seeking, which is, again, the repeat of the PEB. Is there anything I can do to clarify? Okay. Are there any other questions, Your Honor? Any questions? If I may conclude, I would just like to ask that if the court is going to lean one way or the other, lean in favor for the veteran, as the Supreme Court did in Henderson v. Shinseki. Thank you. Thank you. Case is submitted. Next case is 2010.